### J. B. PENLAND v. W. H. LEATHERWOOD.

*Execution—Levy—Application of Proceeds of Sale—Pleading—Damages.*

1. Where the cause of action alleged was that the plaintiff became entitled to the possession of personal property sued for by virtue of the levy of executions issued to him as an officer: *Held*, not to be necessary to set forth in the complaint the process under which the seizure was made.

2. When a levy is made upon personal property the officer making the levy thereby acquires a special property therein, which he holds for the purpose of satisfying the execution in his hands, and after that has been done he should apply the remainder of the proceeds of the sale to the satisfaction of other executions in his hands at the time of the sale.

3. If personal property has been seized by one officer under execution, another officer, having executions also, may make a second or constructive levy, by going to the property and endorsing his levy, on his process, but he has no right to take possession until the first levy is satisfied; but it is the duty of the first officer, having notice of the subsequent levy, to apply any surplus proceeds of his sale to the executions so afterwards levied.

4. Where there has been more than one constructive levy they should be paid off in the order of the time they were made.

5. The measure of damages, in an action for the conversion of property seized under execution, cannot exceed the amount of the executions, principal, interest and costs, which were entitled to be satisfied therefrom.

This is a CIVIL ACTION, which was tried before *MacRae, J.,* at Spring Term, 1888, of HAYWOOD Superior Court.

The plaintiff alleged that as constable he levied certain warrants of attachment and an execution against the personal property in his hands, upon the stock of goods mentioned and specified in the complaint, and that while the same was so levied upon by him and in his possession, the defendant wrongfully seized and forcibly took the same from him, and devoted the same to his own purpose, &c., &c.

The defendant denied all the material allegations of the complaint, and alleged that he, as Sheriff, levied certain executions in his hands upon the goods mentioned, and by virtue of his office and lawful process in his hands, he sold the same, &c., &c.

Plaintiff offered in evidence two warrants of attachment in favor of L. Oppienheimer & Sons against said McIntosh & Sprague, which purported to have been levied on the stock of goods in question on December 10th, A. D. 1885.

Defendant objected, on the ground that said warrants had not been referred to in the complaint, and that there was no allegation in the complaint that plaintiff had obtained any property in, or possession to, said goods under or by virtue of said warrants of attachment.

The Court overruled the objection, and the defendant excepted.

Plaintiff then testified that he received these warrants of attachment December 10th, A. D. 1885, at four or five o'clock p. m., and went to the store of McIntosh & Sprague, and notified the clerk, Mr. Rhineheardt, that he had papers to close up the store and to take charge of the goods, and asked Mr. Rhineheardt for the key, which he refused to deliver to the witness, but after considerable contention he surrendered the key, and witness took charge of the stock of goods, and levied said warrants of attachment thereon; that about twelve o'clock m., on the 11th of December, 1885, while in possession of the said goods, he levied an execution in favor of the Hickory Manufacturing Company, and against McIntosh & Sprague, for thirty-seven dollars, and interest and cost; and that on the same day the warrants of attachment were vacated and dismissed, and two judgments were rendered for the plaintiff Oppienheimer & Sons against McIntosh & Co., but that in the meantime, after three o'clock p. m., of the same day, and before he levied his two executions issued on the two last named judgments, the defendant Sheriff forcibly dispossessed him and took into his own possession the said stock of goods and prevented him from making the money on the first execution, which he had already levied upon said goods, and also prevented him from levying, selling and making the money to satisfy the other two executions which had come into his hands on the said judgments rendered in favor of Oppienheimer & Sons; that he never consented to any such levy by defendant.

The defendant testified that at eight o'clock a. m., December 11th, 1885, as Sheriff of Haywood County, he levied two executions on the stock of goods in controversy, in favor of Hornthorn & Deiches, against McIntosh & Co.; in favor of V. O. Thompson & Co., and against McIntosh & Co.;

and that he also levied, at nine o'clock a. m. of the same day, three other executions on said stock of goods in favor of Wingo, Elliott & Crump, of L. C. Younger & Co., and M. T. Rhineheardt, against McIntosh & Co. The defendant also testified that at 9:20 o'clock a. m. of the 11th of December, 1885, he levied three other executions against McIntosh & Sprague, on said stock of goods.

So much of the other facts and the evidence and the instructions of the Court to the jury as are necessary to a proper understanding of the opinion of the Court are therein adverted to. There was a verdict and judgment for the plaintiff, and the defendant, having assigned error, appealed to this Court.

*Mr. Geo. H. Smathers*, for the plaintiff.
*Mr. G. S. Ferguson*, for the defendant.

MERRIMON, J. (after stating the case.) The first exception is without force. It was neither necessary nor proper to mention or to make any allegation in the complaint in respect to the warrant of attachment mentioned. They were produced on the trial as evidence explanatory how the plaintiff came to have possession at first of the property in controversy. It may be that they were unnecessary for that purpose, but no objection was made on that ground. It is not proper, ordinarily, to allege in the pleadings merely evidential facts, whether documentary or otherwise, or the evidence of the plaintiff's cause of action alleged, or of the defence relied upon in the action. The pleadings should state in an orderly way only the facts which constitute the cause of action and the defence.

If the evidence of the plaintiff himself, received on the trial without objection, be accepted as true, then unquestionably he was entitled to recover in this action. He testified that on the 11th day of December, 1885, he had possession

and control of the goods in question, and levied an execution—it must be taken to have been in all respects a valid and proper one—on the same; that in the course of the same day other like executions came into his hands which he had not levied on the goods at the time the defendant came upon him, as Sheriff, seized the property and forcibly deprived him of the possession thereof.

As the plaintiff so levied upon and had possession of the goods, he had a special property therein for the purpose of selling the same and applying the proceeds of the sale to the payment of the judgment specified in the execution levied and to the satisfaction of any other executions properly in his hands, though they were not actually levied. The property, by virtue of the levy and seizure thereof, was in *custodio legis*, and might, indeed ought, properly to have been applied to the execution then in the hands of the plaintiff as constable, although, except as to the first one mentioned, they had not been actually, but only constructively, levied. As the property levied upon was, or the proceeds of the sale thereof under the levy were, in the custody of the law, the officer was required to apply the same properly to the satisfaction of other executions in their order then current and requiring by the exigency of the same such application. The law is true to its purposes, and will not allow its final process, going against the property of individuals, to be disappointed or defeated while it has in its custody and control property or money of the persons against whose property such process goes that ought to serve its purpose.

There can be but one actual levy of one or more executions upon personal property at one and the same time, because the officer in making the same seizes or gets possession and control of it and has a special property therein and ownership thereof that excludes and prevents other like levies, which levy, however, as we have already seen, places

101—33

the property in *custodio legis,* to be applied in proper cases if need be to other executions.   Other officers having like executions may make other levies upon the same property, but these will be constructive in their nature and entitle the officers making them, in their order, to have the property or the proceeds of the sale thereof after the executions under and in pursuance of which the first actual levy proper was made shall be satisfied.   It is the duty of the officer making the first levy, and having notice of the second and other constructive levies, to so apply the property and the proceeds of the sale thereof, and the Courts will, if need be, compel him to do so.   The late Chief Justice PEARSON meant no more than this when he said, in *Bland* v. *Whitfield,* 1 Jones, 125, that "when an officer has already levied and taken the property into possession a second officer may make a second levy by going where the property is and making the endorsement on his execution.   In this case he has no right to touch the property, and the levy gives him the right to it after the first execution is satisfied."   Such a levy is necessarily only constructive.   The officer making it cannot get possession of the property until the first levy shall be over.   It is the levy of the execution on personal property that creates the lien on the same in favor of the judgment creditor, and hence the proceeds of the sale of the property must be applied to the satisfaction of each execution in the order as to time of the levy of the same.   It is difficult to see how otherwise numerous judgment creditors of their common judgment debtors could have just benefit of executions issued upon their respective judgments going against the debtor's personal property. It is otherwise as to the debtor's real property ; as to it, the docketed judgments creates a lien thereon in favor of the creditor, and a levy serves no other purpose than to designate the particular property sold or to be sold.   *State* v. *Poor,* 4 D. & B., 384; *Jones* v. *Judkins,* Id., 454; *Alexander* v. *Springs,* 5 Ired.,

475 ; *Barham* v. *Massey*, Id., 192 ; *Rives* v. *Porter*, 7 Ired., 74 ; Freeman on Executions, §§ 135, 262, 268 ; Herman on Executions, §§ 172, 174.

If, therefore, the plaintiff testified truly on the trial, he had such special property in and ownership of the goods in dispute as entitled him to recover in this action, his measure of damage being the whole sum of money due upon the execution actually levied upon the goods, as well as that due upon the executions in his hands not actually levied, including costs, at the time the defendant seized the goods and took the same from him.

If, however, the defendant, as his testimony tended to prove, levied executions in his hands while the warrants of attachment were in the hands of the plaintiff and levied by him, and before the latter received the executions that first came into his hands, then the property should have been devoted to the executions in the hands of the defendant at that time, and constructively levied, subject to the levy of the warrants of attachment. Or, if the defendant levied constructively the executions in his hands after the plaintiff levied the execution first in his hands, actually or constructively, and before the plaintiff received the executions which he said he did not levy, then the property should have been first devoted to the first execution so levied by the plaintiff; secondly, to the execution first so levied by the defendant; thirdly, to the execution that came into the hands of the plaintiff next after the levy so made by the defendant; and fourthly, to the executions that came last into the hands of the defendant, if he made a proper constructive levy of the same.

There was some evidence tending to show such order of levies, made constructively and successively, after the first actual levy made by the plaintiff.

But the Court instructed the jury that the defendant, as Sheriff, could not make such constructive levy of executions

in his hands; and, in effect, further, that the plaintiff had the right to devote the property levied upon by him to the satisfaction of the execution that first came into his hands and was levied; and also, secondly, to the execution that subsequently came into his hands, although in the meantime the defendant, as Sheriff, may have made a constructive levy of executions in his hands upon the same property. Such instruction was erroneous.

For reasons already stated, the Court should have instructed the jury, in applying the law, substantially as it is above stated. The appellant is entitled to a new trial, and we so adjudge.

Error.